# GEORGIA COAST AND PIEDMONT RAILROAD COMPANY
## *v.* HINES, administrator.

1. The act approved August 16, 1909 (Acts 1909, pp. 160-62), is not violative of art. 3, sec. 7, par. 8, of the constitution (Civil Code, § 6473), on the ground that the body of the act refers to more than one subject-matter, or that the act contains matter different from that expressed in the title, or that the title is too indefinite to indicate the matters contained in the several sections of the act.

2. The allegations of the petition were sufficient to withstand a general demurrer, which complained that the petition failed to set forth a cause of action.

SEPTEMBER 24, 1912.

Action for damages. Before Judge Charlton. McIntosh superior court. May 23, 1911.

*Hitch & Denmark,* for plaintiff in error.

*Adams & Adams,* contra.

ATKINSON, J. 1. J. C. Hines, as administrator upon the estate of C. L. Hines, instituted an action for damages against the Georgia Coast & Piedmont Railroad Company, on account of the homicide of plaintiff's intestate. The suit was founded on the provisions of the act approved August 16, 1909 (Acts 1909, pp.

160-62).   The homicide occurred subsequently to the passage of this act and before its codification.   At the trial term of the court the defendant filed a written motion to dismiss, one of the grounds whereof assailed the act above recited, as violative of art. 3, sec. 7, par. 8, of the constitution of this .State (Civil Code, § 6437), and void.   The caption of the act is, "An act relating to the liability of common carriers by railroads to their employees in certain cases, and for other purposes."   The criticisms of the act are:   (*a*) That it refers to more than one subject-matter, in that "the first section sets out the liability of carriers for injuries or the death of employees, names the parties who shall be entitled to sue, the circumstances under which the carrier shall not be liable, the measure of damages in case of liability for death, and sets forth the rule of evidence or method of proof which shall apply in such cases. Section 2 of said act sets forth the effect of contributory negligence on the part of the employee and the effect of violation by the carriers of any statutes enacted for the safety of employees.   Section 3 of said act states the conditions under which the employees shall not be held to have assumed the risk of employment.   Section 4 declares what effect shall be given to contracts or rules exempting the carrier from liability created by the act.   Section 5 names the period of limitations within which suit may be brought for causes of action arising under said act.   Section 6 designates who and what shall be included within the meaning of the term 'common carrier' as used in the act.   Each of these matters dealt with in the several sections of said act is a separate and distinct subject-matter. Section 1 of itself refers to more than one subject-matter; so also does section 2."   (*b*) That the act contains matter different from what is expressed in the title, and the title is not sufficiently specific or definite to express or indicate any of the matters contained in the several sections of the act, the nature of which is just before outlined.   The grounds relied on to support the contention that the body of the act contains matter different from that expressed in the title, and that the title is not sufficiently definite, were alleged as follows:   "The title does not express or indicate the fact or cause, or degree or measure, of liability, nor the circumstances or conditions under which liability arises, nor the parties in whose favor liability arises.   It does not express or indicate what presumptions shall arise in favor of either party, or when or under what

circumstances they will arise. Nor does it express or indicate what defenses the carrier may make, nor the circumstances under which liability shall not arise. It does not express or indicate what shall be the effect of contributory negligence or lack of ordinary care on the part of the employees nor what shall be the effect of a violation by the carrier of statutes enacted for the safety of employees. It does not express or indicate when or under what circumstances the employee shall or shall not be held to have assumed the risk of employment, nor the effect or result of exemption contracts or rules on the part of the carrier, nor the period of time within which suits may be instituted, nor does it express or indicate that the term 'common carrier' shall include receivers. Each and all of the matters dealt with and referred to in the several sections of said act are different from what is expressed in the title thereof."

It frequently occurs that acts of the legislature are assailed as violative of the provisions of the constitution above mentioned, and it would be unprofitable to enter into a discussion of them in this particular case, as it involves nothing more than the application of settled law to the facts. While the body of the act purports to work out in detail the different elements involved in the liability of a railroad common carrier to its employees for injuries to them, it does not contain any matter which is not germane or authorized by the broad title. The title was sufficiently definite to inform the members of the legislature that the body of the act would appertain generally and deal in detail with matters relating to the liability of such railroad companies to their employees. All of the provisions in the body of the act were germane to the title, and related to the one general subject-matter. Under these conditions, the title of the act was not too indefinite; nor was the body of the act subject to the criticism that it referred to more than one subject-matter, or that it contained matter different from that expressed in the title.

2. According to the allegations of the petition, the plaintiff was the father of the decedent, who had never been married and left no mother. At the time of the homicide the decedent, who was the superintendent of the defendant railroad company, was killed while in the performance of his duty, and while being carried on a railroad motor-car provided by the railroad company for his

use. The homicide occurred after night. A log-train had preceded the motor-car a sufficient length of time to have arrived at its destination, thus leaving the track clear for the motor-car. Some of the cars from the log-train had become detached and left unguarded and unlighted on the main-line track while the engine and other cars proceeded to their destination. The detached cars were not missed until the engine had reached its destination. The train crew returned for the missing cars, but before they were discovered the motor-car on which plaintiff's intestate was riding ran into it and caused the injury from which death resulted. The grounds of negligence alleged were. "*a.* In operating said logging-train without a light on its rear end. *b.* In not having a light on the rear end of said cars which had broken loose, and in not maintaining a light there. *c.* In not having said cars so coupled and attached to the other cars of said logging-train that they would not break loose. *d.* In permitting said cars to break loose. *e.* In permitting said cars, which had broken loose, to remain on said track for a long time, to wit, in the neighborhood of two hours. *f.* In not discovering that said logging cars had broken loose for a period of time, to wit, an hour or more after they had broken loose. *g.* In permitting the log to project from the rear end of said logging-train. *h.* In having an insufficient crew on said logging-train. *i.* In failing to have some one of its employees stationed on the rear end of said logging-train. *j.* In failing to post a lookout or other signal to stop the said motor-car. *k.* In failing to warn the occupants of the said motor-car that said cars were on the tracks." The allegations of the petition were sufficient to withstand a general demurrer, which complained that the petition failed to set forth a cause of action.

*Judgment affirmed. All the Justices concur.*